## JONES v. COMMONWEALTH.

Court of Appeals of Kentucky.
March 27, 1953.

Russell Vanover, Pikeville, for appellant.
J. D. Buckman, Jr., Atty. Gen., and John B. Browning, Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

The appellant, Earl Jones, was convicted of assault with intent to kill as denounced by KRS 435.170(2) and sentenced to three years in prison.

Numerous grounds are urged for reversal, but we shall consider only those grounds that appear in appellant's motion for new trial which have not 'been abandoned on appeal. They are: (1) The verdict was a result of passion and prejudice and was flagrantly against the evidence; (2) relationship of one of the jurors to the prosecuting witness; and (3) erroneous instructions.

The evidence shows without contradiction that on January 18, 1952, appellant

committed a savage assault upon J. A. Runyon. According to the testimony of Mr. Runyon, appellant approached him while he was standing on the sidewalk in front of his law office, grabbed him by his coat collar and struck him in the face with some object that "looked like steel knucks." The blow felled Mr. Runyon. Appellant then brutally kicked him and beat him with his fists.

Appellant admits that he committed the assault but denies he used "knucks" or any weapon. Appellant testified that he administered the beating to Runyon because his wife told him Runyon had raped her while she was in his office consulting him about a divorce action she had brought against appellant and in which Runyon was acting as her attorney. The following quoted excerpt from appellant's testimony expresses malice and his intention:

"I said, J. A., my wife, Sarah May has told me everything and I am going to give you a whipping and give you a damn good one. That is the exact words that I said. * * *. I done my very best to do what I told him I was going to do. * * *. I used my fists and I did kick him."

Several doctors who attended Mr. Runyon following the assault testified as to the severity of Runyon's wounds.

Mr. Runyon denied that he had raped or abused appellant's wife. He testified appellant's animosity toward him had resulted from other causes.

It is evident that the verdict is not flagrantly against the evidence, nor do we think it was a result of passion and prejudice. The appellant admits he gave Mr. Runyon a severe beating. By way of defense, he attempted to justify the assault by claiming that Runyon had provoked it. And in view of the gravity of the offense the sentence imposed upon appellant by the jury was not so severe that it strikes us to be a result of passion and prejudice.

It is next argued in behalf of appellant that the juror Carl Adkins was related by marriage to the prosecuting witness and had not disclosed that relationship when interrogated thereon during the voir dire examination. It was established that the prosecuting witness, J. A. Runyon, is a second cousin of Carl Adkins' wife. The affidavit of Carl Adkins stated that he was unaware of any relationship that existed between him and Mr. Runyon, and Adkins' wife stated in her affidavit that she was ignorant of any kinship between Mr. Runyon and her.

It appears that the relationship of the juror to the prosecuting witness is remote and that the juror was unaware of such kinship when he served on the jury. Under these circumstances we are of the opinion that the court did not abuse its discretion in denying appellant a new trial. See Horton v. Commonwealth, Ky., 240 S. W.2d 612; Reed v. Commonwealth, 273 Ky. 607, 117 S.W.2d 589, 116 A.L.R. 673; Miracle v. Commonwealth, 148 Ky. 453, 146 S. W. 1136.

Appellant further insists that the instructions were erroneous in that the jury was permitted to find that appellant's "feet and shoes" were deadly weapons. The instructions complained of were as follows:

"Instruction I. If the jury believe from the evidence beyond a reasonable doubt that the defendant, Earl Jones, in Pike County and before the finding of the indictment herein on March 5, 1952, did willfully and maliciously assault, strike and beat J. A. Runyon with a weapon upon the head or body or both with the intent then and there to kill the said J. A. Runyon and that the weapon used by the said Earl Jones was a deadly weapon as defined in these instructions, then the jury will find the defendant guilty as charged in the indictment and fix his punishment at confinement in the state penitentiary for not less than two years nor more than twenty-one years.

"Instruction II. The word 'willfully' as used in these instructions means intentionally, not accidentally.

"The word 'maliciously' as used in these instructions means a predetermination to do an unlawful and wrong-

522

ful act without legal excuse and it is immaterial at what time before the doing of the act such determination was formed.

"The phrase 'a deadly weapon' as used in these instructions means a weapon or instrument reasonably calculated to produce death. The defendant's feet and shoes on the occasion proven in evidence may be found by the jury to have been a deadly weapon, if the jury shall believe from the evidence beyond a reasonable doubt that the said defendant's feet and shoes were reasonably calculated to produce death when used by a man of the defendant's age and strength and in the way and manner in which the jury shall find from the evidence they were used by him on the occasion proven in the evidence."

When the weapon is of such character as to admit of but one conclusion in that respect, the question of whether or not it is deadly is one of law, but where the weapon employed is such that its deadly character depends upon the manner and circumstances of its use, the question is one of fact for the jury. Owens v. Commonwealth, 187 Ky. 207, 218 S.W. 719. It is well settled that hands and feet are not deadly weapons per se. Reed v. Commonwealth, Ky., 248 S.W.2d 911; McIntosh v. Commonwealth, 275 Ky. 126, 120 S.W.2d 1031; Lyon v. Commonwealth, 194 Ky. 570, 239 S.W. 1046.

Under the instructions we do not think the jury was called upon to determine that "hands and feet" were deadly weapons. It is clear that the issue submitted was whether the shoes on the accused's feet, used by him in stomping and kicking the prosecuting witness, constituted a deadly weapon within the meaning of the statute. Therefore, we conclude that "shoes" may be regarded as within the term "deadly weapon" when employed in such a manner as may be reasonably calculated to produce great bodily injury or death.

Upon the whole case we are satisfied that appellant had a fair trial.

The judgment is affirmed.